*In the Matter of the Minor Child, M.M.Y.*

In the District Court of the Navajo Nation
Judicial District of Crownpoint, New Mexico

No. CP-FC-15-03
Re: CP-FC-631-02

March 17, 2004

**FINAL ORDER**

THIS MATTER came before the Court upon Petitioner's Motion for Paternity, Child Custody, Support and Visitation, and the submission of Navajo Nation

Department of Social Services ("DSS") Reports regarding Petitioner, Respondent and Minor Child. The Court, being informed in the premises, and issuing this Order without hearing based on admission in her DSS report, hereby FINDS:

1. Prior to April 2, 2002, Petitioner and Respondent shared custody of M.M.Y., the minor child at issue in this case (hereinafter "minor child"). At that time, the minor child resided with Petitioner. On April 2, 2002, was visiting Respondent celebrating his birthday. That day he was taken into protective custody as a ward of this Court following the arrest of his mother (Respondent in the instant case, hereinafter "Respondent") who was charged with child endangerment and disorderly conduct. Social Services was granted with temporary legal custody at that time.

2. On June 2, 3002, the minor child was returned to the physical custody of Petitioner pending a home study of Petitioner and final adjudicatory hearing.

3. Subsequently, the child's maternal grandparents (hereinafter "Interested Parties") filed a Petition for Guardianship of the child in case #CP-FC-631-02. Pursuant to said Petition, this Court entered a Guardianship Decree on August 23, 2002 without notice to Petitioner.

4. The child continued to live with Petitioner until on or around November 2, 2002, when the Interested Parties picked up the child for a scheduled visit and never returned him.

5. On January 3, 2003, Petitioner motioned for Relief From the Guardianship Decree and filed his Motion for Paternity, Child Custody, Support and Visitation.

6. On June 3, 2003 this Court voided the Guardianship Decree issued on August 23, 2002 for lack of proper notice to Petitioner. Said Order left open the question of whether or not the minor child should remain in the custody of Petitioner or whether in the best interest of the child the Interested Parties should regain custody.

7. On August 25, 2003 this Court ordered that physical custody of the minor child should revert to Petitioner pending social services reports on the living situations of both Petitioner and Respondent.

8. On February 9, 2004 Navajo Nation Division of Social Services ("DSS") provided a report on Petitioner, Respondent and the minor child (which includes a description of the child's home environment while living with the Interested Parties.

## CONCLUSIONS OF LAW

While the procedural history of this case might lead one to believe that it is a case regarding guardianship of the minor child, it is not. The crux of this case is the proper custodial determination of the minor child as between his mother and father.

A determination as to who should be the proper custodian of the child as between the Petitioner and Respondent is easily disposed of. While Respondent is in the process of improving her parenting skills through counseling, she "is realistic about her own weaknesses and is aware of her vulnerabilities [and] she knows that she cannot provide for her minor children" at this time. DSS Report, Concerning Court Docket No. CP-FC-15-03, February 03, 2004 (filed herein).

While the case is about custody and not guardianship, the Court recognizes the need for a discussion of guardianship in this case. 9 NNC § 1107(G) states that "the court shall appoint a guardian for a child if the court determines that the child does not have a parent ... in a position to exercise effective guardianship." *Id.* In the instant case, no one alleges that Petitioner is not an effective guardian. One issue before the Court has been who might be a more effective guardian-Petitioner or the Interested Parties. Yet this ignores the real issue-the rights of a parent to raise his or her child absent a showing of harm or detriment to the child.

The primary stated purpose of the Navajo Nation Children's Code is to "preserve and restore the unity of the family whenever possible." 9 NNC § 1001(A). Another portion of the Children's Code, which details the disposition of a Dependent Child, provides that the Court shall give priority to placement of the child with the closest relative who is found qualified to receive and care for the child by the Court after investigation by the Court counselor or an agency designated by the Court." 9 NNC § 1151(A). While this language does not directly apply to this case (as there has been no determination that the minor child is dependent) it does demonstrate the Navajo Nation's understanding that it is in the child's best interest to be placed with his father in this instance. Petitioner is obviously the closest relative and there have been no allegations that he is not qualified to care for the minor child. According to the DSS report filed herein, Petitioner is self-employed. He is raising four children, one being the minor child at issue in this case. According to the report he "appears to be making his best effort to provide for his minor children." For example, he "helps them with homework, helps with dinner, and takes the children to the school bus." Furthermore, he "certainly appears to love the children." While DSS expresses some concern that Petitioner relies on his mother to share housing and transportation, nothing in the report demonstrates that Petitioner's custody of the minor child has any detrimental effect on the minor child.

Another DSS report does demonstrate that the Interested Parties care a great deal for their grandchild and provide him with a comfortable living

environment, that they own their own home, and provide him with his own room and belongings, and that the minor child was poised to enter an accelerated learning program at school.

The Court is not deaf to the Interested Parties' concerns that they are acting in the best interest of their grandchild and that they might arguably be able to provide the minor child with a higher standard of living than Petitioner. The Social Service Report on the living situation M.M.Y. enjoyed while living with them demonstrates their continued interest in and love for the minor child. The Court also recognizes that not every aspect of the report on Petitioner may demonstrate an "ideal" living arrangement for the minor child. Yet this analysis ignores the fact that absent detriment to a child, the most important element of a child's home life is the bond that exists between a parent and the child.

The report on Petitioner demonstrates that Petitioner is making a good faith effort to raise his all of his children, including the minor child at issue, to the best of his ability and said report has shown the Court that Petitioner is competent in the care of the minor child. It is conceivable that in almost every extended family, there may be relatives who might be able to provide a nicer home, or a better education for their grandchild than one or both of the parents are capable of providing. Yet, absent a showing of harm to the child, the rights of parents to raise their own children is a right so basic and fundamental, that in the balance, the Court has no option but to place such a child with his or her parent or parents as opposed to extended family members.

This Court, however, cannot ignore that the Navajo Culture is one based on a matrilineal system and that Navajo children's primary cultural identification stems from the mother's clan. As DSS so aptly states in one of its reports, "this is a means of continuity for generations of Navajo families." For this reason, the Court must take into consideration that it is in the best interest of the minor child to have continued interaction with his maternal grandparents and supervised visits with his mother.

Regarding a determination of paternity, while "an alleged father named in a birth certificate does not release a Navajo Family Court from making a legal determination of paternity, ... the court may apply presumption of paternity ... [weighing] all the evidence presented." *Davis v. Crownpoint Fam. Ct.*, 8 Nav. R. 279 , 286 (Nav. Sup. Ct. 2003). No evidence was presented in this case contesting the fact that Petitioner is the father of the minor child. In fact, the evidence and pleadings appear to support the fact Petitioner is the minor child's father.

Regarding Petitioner's prayer for child support for the minor child, Petitioner has failed to provide the court with any proof regarding a proper determination of child support.

Based on the foregoing IT IS THEREFORE ORDERED that the Petitioner is declared the biological and natural father of the minor child.

IT IS FURTHER ORDERED that the sole legal and physical custody of the minor child shall be vested with Petitioner.

IT IS FURTHER ORDERED Petitioner's request for child support is hereby, DENIED and that in the interest of judicial economy any future Petition for Determination of Child Support shall be made in a separate case.

IT IS FURTHER ORDERED THAT Respondent is granted reasonable liberal supervised visitation rights. Any visits between Respondent and minor child shall be supervised by the Interested Parties in the best interest of the child until there has been a change in circumstances significant enough to permit unsupervised visits. Supervision by the Interested Parties also satisfies the Court's concern that the minor child continue to be connected to his matrilineal line through his maternal grandparents.

The Court has decided to leave the determination of scheduling of visitation to the parties to this suit because it is the parties who are best able to work out the details of visitation in a way that is most convenient to the parties and in a way most likely to restore *hózhǫ́*—the traditional Navajo concept of general well being and harmony-to the family structure. By doing so, the Court expects that visitation schedules will be made in good faith as further family strife would not be in the best interest of the minor child.